IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,   )
                            )
                 Plaintiff, )
                            )
v.                          )   No. CIV-09-772-L
                            )
CAN D. PHUNG,               )
                            )
                 Defendant. )

# **O R D E R**

On May 21, 2008, a federal grand jury returned a 53 count indictment against the defendant in this case, Can D. Phung. Defendant was charged with 51 counts of intentionally dispensing a controlled substance in violation of 21 U.S.C. § 841(a)(1), one count of health care fraud in violation of 18 U.S.C. § 1347(1), and one count of altering records in violation of 18 U.S.C. § 1519. The matter was tried to a jury, which returned a verdict of guilty as to all counts on February 4, 2009. Defendant was sentenced by the Honorable Vicki Miles-LaGrange to a total term of imprisonment of 109 months. Defendant's conviction was affirmed by the Court of Appeals for the Tenth Circuit on June 29, 2010. United States v. Phung, 384 Fed. Appx. 787, 794 (10th Cir. 2010) (unpublished).

On July 21, 2009, the United States filed this action seeking damages and civil penalties for alleged violations of the False Claims Act, 31 U.S.C. § 3729. The complaint alleged that defendant sought reimbursement for 74 upcoded Medicaid

claims, presented two false or fraudulent claims and made a false record with respect to those claims, and caused to be presented thirteen false or fraudulent claims for prescriptions.

This matter is before the court on cross-motions for summary judgment.[1] Summary judgment is appropriate if the pleadings, affidavits, and depositions "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The "'mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)) (emphasis in original). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party must "set out *specific* facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2) (emphasis

---

[1]The government seeks summary judgment only with respect to Count 1 of the complaint, but notes that it will dismiss the remaining counts should summary judgment on Count 1 be entered. United States' Motion for Summary Judgment and Brief in Support at 9 n.5 (Doc. No. 57) [hereinafter cited as "Government's Motion"].

added). *See also*, Anderson, 477 U.S. at 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). In addition, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The undisputed facts[2] establish that Count 52 of the indictment charged that, in 2006 and 2007, defendant "knowingly and willfully executed and attempted to execute a scheme and artifice to defraud a health care benefit program, specifically Medicaid, in connection with the delivery of and payment for health care benefits and services. Specifically, the defendant billed Medicaid for evaluation and management

---

[2]The facts recited are taken, in the main, from the government's Statement of Uncontroverted Facts set forth in its motion. The court's Local Civil Rules provide that briefs in opposition to motions for summary judgment "shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's facts that is disputed." LCvR 56.1(c). Contrary to this rule, defendant did not specifically controvert the material facts set forth in the government's motion for summary judgment, nor did he begin his motions for summary judgment with a concise statement of material facts to which he contends no genuine dispute exists. *See* LCvR 56.1(b). Although defendant is appearing *pro se*, he is still bound by the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the court's Local Civil Rules. *See* Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840-41 (10th Cir. 2005). Pursuant to Rule 56.1, those facts that are supported by the record and that have not been specifically controverted by defendant are therefore "deemed admitted for the purpose of summary judgment". LCvR 56.1(c).

services for patients where he did not obtain an appropriate medical history or provide an appropriate examination of the patient." Exhibit 1 to Government's Motion at ¶ 28. In the criminal case, the government presented the testimony of Jean Krieske[3] as an expert witness. Krieske testified that she compared claims submitted by defendant during the period June 3, 2006 through April 3, 2007 against the patient files associated with those claims. Based on her review, she concluded that defendant systematically billed at a higher level of service than was justified by his patient files. A provider's using a code[4] to bill Medicaid for a higher level of service than was actually provided is known as "upcoding". Upcoding results in the provider obtaining a higher payment than warranted.

At the conclusion of the criminal trial, the court instructed the jury on the essential elements of Count 52. The jury was instructed that to find defendant guilty of Medicaid fraud the government had to prove the following beyond a reasonable doubt:

> First:  the Defendant knowingly and willfully devised a scheme or artifice to defraud Medicaid in

---

[3] Krieske's last name was Varner when she testified in the criminal case.

[4] Providers who seek reimbursement from Medicaid must comply with requirements established by the Centers for Medicare and Medicaid Services, which provides that claims be submitted by codes. The codes are based on criteria established by the American Medical Association in the Physicians' Current Procedural Terminology ("CPT") code book. In general, the codes reflect five levels of service, ranging from lowest complexity (level 1) to highest complexity (level 5). Exhibit 6 to Government's Motion at ¶ 6. A physician must document the level of complexity for each claim in his or her patient files, and Medicaid only pays for services that are coded in accordance with the CPT code book. Id.

>>connection with the delivery of or payment for
>>Medicaid benefits, items or services;

>Second: the Defendant executed or attempted to execute the scheme or artifice to defraud; and

>Third: the Defendant acted with intent to defraud Medicaid.

Exhibit 4 to Government's Motion at 2. In addition, the jury was informed that "[a] defendant acts with the requisite 'intent to defraud' if the defendant acted knowingly and with the specific intent or purpose to deceive". Id. After receiving these instructions, the jury in the criminal case found defendant guilty as charged.

In this case, the government seeks damages and civil penalties under the False Claims Act. The False Claims Act provides for civil liability for any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval". 31 U.S.C. § 3729(a)(1).[5] The Act defines a "claim" as

>any request or demand, whether under a contract or otherwise, for money or property which is made to a

---

[5]The Act was amended by the Fraud Enforcement and Recovery Act of 2009. The amendment to § 3729(a)(1) was not made retroactive, and therefore only applies to ""conduct on or after the date of enactment", that is May 20, 2009. Pub. L. No. 111-21, 123 Stat. 1617 (2009). As the conduct at issue in the government's motion all occurred in 2006 and 2007, the pre-amendment version of the statute controls the court's analysis of the government's motion. In contrast, the amendment to § 3729(a)(2), redesignated as § 3729(a)(1)(B), was made retroactive to all False Act Claims pending on or after June 7, 2008. Pub. L. No. 111-21, 123 Stat. 1617 (2009). Analysis of Count 2 of the Complaint, which seeks recovery under both sections of the statute, is thus governed by pre-amendment § 3729(a)(1) and post-amendment § 3729(a)(2). Unless otherwise indicated, all references to the False Claims Act in this order are to the pre-amendment version.

> contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729(c).

In its motion for summary judgment, the government asserts defendant submitted seventy-four claims for Medicaid reimbursement that were false due to upcoding. In support of its position, it claims the judgment in the criminal case estops defendant from denying the existence of a scheme to defraud Medicaid. Under the False Claims Act,

> a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

31 U.S.C. § 3731(e). In addition to statutory estoppel, plaintiff argues defendant is precluded from relitigating the existence of a fraudulent scheme based on common law principles of collateral estoppel. That a criminal conviction may have a preclusive effect on a subsequent civil litigation is well-established. *See* Allen v. McCurry, 449 U.S. 90, 104 n.22 (1980). As the Court of Appeals for the Second Circuit has acknowledged, "[a] criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil

6

proceeding as to those matters determined by the judgment in the criminal case."

New York v. Julius Nasso Concrete Corp., 202 F.3d 82, 86 (2d Cir. 2000). Under federal common law, there are four requirements that must be met for issue preclusion to apply:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Park Lake Resources Ltd. Liability v. United States Dep't of Agric., 378 F.3d 1132, 1136 (10th Cir. 2004) (*quoting* Dodge v. Cotter Corp., 203 F.3d 1190, 1198 (10th Cir.), *cert denied*, 531 U.S. 825 (2000)).

There is no dispute that the criminal case has been finally adjudicated or that defendant was a party to that case. Likewise, there is no dispute that defendant had a full and fair opportunity to litigate the Medicaid fraud issue during the criminal trial. The only question then is whether the issues in the criminal case with respect to Medicaid fraud are identical to those presented here. The court finds they are. The essential elements of the Medicaid fraud count in the criminal case were that (1) defendant knowingly and willfully devised a scheme to defraud Medicaid in connection with payment for Medicaid benefits; (2) he executed or attempted to execute the scheme; and (3) he did so with the intent to defraud Medicaid. Under the False Claims Act, the government must establish that defendant made a claim

7

to the United States Government that is false or fraudulent, knowing of its falsity, and seeking payment from the government. In both the criminal case and in this action, the government has alleged that defendant executed an upcoding scheme during 2006 and 2007.[6] To convict defendant in the criminal case, the jury had to find the existence of this scheme and defendant's knowing participation in it. Indeed, the evidence presented by the government in the criminal case demonstrated a pattern of upcoding as the patient charts did not reflect the level of service required for the charged codes.[7] The government presents that same evidence here. Thus, the scheme at issue in the criminal case is identical to the one alleged in the civil case. Moreover, the time frame in the two cases overlap, although the civil case involves claims that occurred slightly before and slightly after the time frame at issue in the criminal case. The court thus finds defendant is precluded from relitigating whether he executed a scheme to defraud Medicaid and whether he knowingly did so.

In addition to its estoppel argument, the government offers the affidavits of Krieske and Special Agent Daniel Mobley, which are also sufficient to impose liability

---

[6] The indictment alleged that "defendant billed Medicaid for evaluation and management services for patients where he did not obtain an appropriate medical history or provide an appropriate examination of the patient." Exhibit 1 to Government's Motion at ¶ 28. This is precisely the claim made by the government in this action.

[7] Defendant argues the scheme in the criminal case differs from the scheme alleged in this case because Krieske's testimony in the criminal case concerned fictitious claims, rather than upcoded claims. In support of this position, he cites Krieske's testimony that she could not determine whether defendant in fact saw certain patients face-to-face; this testimony, however, was based on the lack of documentation in the patient file consistent with such a visit. In the criminal case, Krieske consistently testified that the codes associated with these claims were not appropriate because they were not justified by the patient charts. *See, e.g.*, Transcript of Jury Trial Vol. II at 318-19, 320, 323-24 (Doc. No. 155). This is the essence of an upcoding claim.

on defendant under the False Claims Act.[8] In her affidavit, Krieske explains that she examined eighty-one claims[9] submitted by defendant during the period June 3, 2006 through April 3, 2007 and compared those claims with the documentation in defendant's patient files. Based on that review, she concluded that defendant's "billing and treatment records reflected a systematic pattern of billing at a higher level of service than that justified by the documentation in the file." Exhibit 2 to Government's Motion at ¶ 9. In his affidavit, Mobley verified that defendant had a SoonerCare[10] Physician Provider Agreement on file with the Oklahoma Health Care Authority ("OHCA"). Exhibit 6 to Government's Motion at ¶ 5. By signing this agreement, defendant certified that the information he provided on submitted claims was accurate and complete and that OHCA's requirements had been met. Id. Mobley's affidavit presents additional evidence of defendant's knowing submission of false claims. On April 7, 2008, Mobley issued a subpoena to defendant for patient files. Exhibit 6 to Government's Motion at ¶ 16. Mobley also obtained copies of the same files that defendant had provided to the Oklahoma State board of Medical

---

[8]Defendant's conclusory allegations that Krieske and Mobley have committed perjury are insufficient to create a genuine issue of material fact. Moreover, given that the court does not weigh the credibility of witnesses when ruling on motions for summary judgment, defendant's assertion that Krieske and Mobley are biased is irrelevant at this juncture. Furthermore, as bias does not make a witness incompetent to testify, defendant's motions to preclude their testimony must be denied.

[9]Although Krieske examined eighty-one claims associated with twenty-three patients, the government has elected to seek damages and civil penalties with respect to only seventy-four claims associated with twenty-two patients.

[10]SoonerCare is Oklahoma's name for its Medicaid program.

Licensure and Supervision and the OHCA in April 2007. When Mobley compared the files, he determined that "the records provided by Dr. Phung in 2008 had been substantially altered and changed from the records he had previously provided to the licensure board in 2007. It appeared that the records obtained in 2008, had now been altered to include documentation of a full medical exam and personal vital signs". Id. at ¶ 17. The initial lack of documentation is what led to the upcoding charges; that defendant altered the charts reflects his knowledge that such documentation was required to support the claims previously made.

Based on estoppel principles and the uncontroverted evidence presented by the government, the court finds plaintiff has established defendant's violation of the False Claims Act as alleged in Count 1 of the complaint. Defendant is thus liable to the government for "3 times the amount of damages which the Government sustain[ed]"[11] because of defendant's acts. The government asserts that it suffered actual damages of $2,356.29. This amount, however, overstates the amount of damages sustained by the government because Medicaid is a federal/state partnership in which the two governments share costs. Effective October 1, 2005, the federal government paid 67.91 percent of the medical services costs in Oklahoma. Exhibit 6 to Government's Motion at ¶ 7. Thus, the proper amount

---

[11] 31 U.S.C. § 3729(a).

damages sustained by the government is $1,600.16.[12] See United States ex rel. Woodard v. Country View Care Center, Inc., 797 F.2d 888, 893 (10th Cir. 1986). Three times this amount is $4,800.48. In addition to actual damages, the government is entitled to statutory penalties of not less than $5,500.00 or more than $11,000.00.[13] For purposes of its motion for summary judgment, the government has requested statutory penalties in the amount of $121,000.00. This amount represents the minimum fine amount ($5,500.00) multiplied by the number of patients (22), rather than by the number of claims submitted by defendant. The court finds this concession by the government alleviates concern that imposition of statutory penalties in this case would violate the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. While this still results in imposition of a penalty that is 76 times the actual damages incurred by the government, the court finds it is reasonable given the scope of defendant's Medicaid fraud. In addition to the 74 claims associated with the 22 patients in this case, there were another 19 claims associated with 6 additional patients at issue in the criminal case. The evidence presented in both cases demonstrates defendant's upcoding scheme was pervasive. Were the court to base the penalties on the number of

---

[12]This amount is calculated by taking the difference between the amount billed by defendant ($5,224.00) and the amount he should have billed ($2,867.71), which is $2,356.29, and multiplying this amount by the federal government's payment percentage of 67.91.

[13]The statute reflects penalty amounts of $5,000.00 and $10,000.00. 31 U.S.C. § 2729(a). These amounts, however, have been increased in accordance with Pub. L. 101-410.

claims at issue in this case, the statutory penalties would total $407,000.00, or 254 times the government's actual damages.

The court thus finds the government is entitled to judgment in its favor on Count 1 of the complaint. Given the government's intent to dismiss Counts 2, 3, and 4, the court need not rule on defendant's cross-motions for summary judgment, which address these claims. Regardless, defendant would not be entitled to summary judgment on those claims as he presents nothing but conclusory arguments in favor of his motions. The party seeking summary judgment, however, must present admissible evidence in support of its motion. *See* Johnson v. Weld County, 594 F.3d 1202, 1209 (10th Cir. 2010). Conclusory arguments are insufficient.

In sum, the United States' Motion for Summary Judgment (Doc. No. 57) is GRANTED. Defendant's Motions for Summary Disposition (Doc. Nos. 55 and 56), Motion for Specific Objection to the Government's Witness, S.A Daniel Mobley (Doc. No. 69), and Defendant Phung's Motion for Specific Objection to the Plaintiff's Expert Witness, Ms. Jean Krieske (Doc. No. 73) are DENIED. In accordance with the agreement between the government and defendant's prior counsel, the court will permit the government to dismiss Counts 2, 3, and 4 of the complaint provided the dismissal is **with prejudice**. Judgment in favor the of the United States will enter

once the government files its notice of dismissal of Counts 2, 3, and 4, which shall be filed within **five (5) days** of the date of this order.

It is so ordered this 15th day of August, 2011.

/s/ Tim Leonard
TIM LEONARD
United States District Judge